FILED

DEC - 8 2005

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>ANNETTE MITCHELL,<br><br>    Debtor. | Case No. 05-31677-A-11<br><br>Docket Control No. PP-1<br><br>Date: December 5, 2005<br>Time: 1:30 p.m. |

**MEMORANDUM**

The motion will be granted pursuant to 11 U.S.C. § 362(d)(1) & (d)(2) to permit the movant to conduct a nonjudicial foreclosure sale and to obtain possession of the subject property following sale.

Secured creditor Maurice O. Ray, Jr. seeks relief from the automatic stay with respect to a former convalescent home located at 1120 Sylvia Drive in Lodi, California. The schedules indicate that debtor is a 1/7th owner of this property. When the debtor and six other individuals purchased the property from the movant one year ago in December of 2004, the property was vacant. It sold for approximately $3,100,000. The movant took back a $1,200,000 note and junior deed of trust and the debtor and the other co-owners took title subject to the senior deed of trust which secured approximately $1,900,000.

After acquiring the property, the owners of the property made $300,000 to $400,000 in repairs to the property. This



primarily included repairing the roof and removing and installing new interior drywall. These repairs, however, have not substantially enhanced the property's value. The court makes this finding for three reasons. First, the work on the property explained in oral testimony amounts to repairs rather than improvements. Second, given the filing of mechanic's liens, much of the work done has not been paid for. So, even if the work enhanced the property's value, it has also increased the claims against the property and the estate. Third, completion of the repairs has not attracted a tenant or a buyer.

The movant alleges lack of equity on the basis that the value of the property is $3,300,000, whereas the encumbrances total $3,449,684.42. The debtor asserts, based on her own opinion and that of Samuel Ajayi, one of the co-owners and a real estate broker, that the property has a fair market value of $5,500,000. The movant disputes the scheduled value of the property, $5,500,000, and has submitted a Written Report of Investigation and Appraisal by David L. Bonuccelli in support of his valuation of the property.

Mr. Bonuccelli's appraisal report concludes that the property has a value of approximately $100.175 per square foot. Applying the Sales Comparison Approach, he has reached this conclusion based on the comparison of the property with three other properties, only one of which is labeled "Comparable." The other two properties are labeled as inferior, and one of the two is labeled as "Converted to Apartments." His appraisal does not explain what property characteristics of the comparison properties were comparable or inferior, nor does it explain in

detail why the court should consider their value in determining the value of the subject property. Moreover, the only property labeled as "comparable" was sold at a value of $140 per square foot. There is very little analysis in the written appraisal explaining why the subject property is valued at $100.175 per square foot rather than $140.

Despite these shortcomings of the appraisal, the court finds that the property has a value of approximately $3,300,000. It does so for the following reasons.

First, to operate the property as a convalescent home would require improvements likely to cost more than $1,000,000. As explained by Mr. Ray, these improvements would be necessary even though the property formerly operated as a convalescent home. Because it ceased operating, to be relicensed would require that the property be brought up to current building and ADA standards. This is mentioned in some detail in Mr. Bonuccelli's written appraisal and influenced his opinion of value under the Cost Approach.

Second, even if the property were to be converted to some other use, such as a church school, a homeless shelter, or commercial office space, there is no evidence that such change of use would obviate the need for further improvements. But, even if no further improvements were necessary, the debtor and her co-owners have been unable in one year to put the property to any commercial, cash producing use. Mr. Ajayi maintains an office on the premises but he pays no rent. The debtor has been sheltering some homeless persons on the property but this has produced no significant, if any, cash flow. It is difficult to believe that

this moribund commercial property has appreciated beyond its purchase price of one year ago.

Third, for the property to be worth $5,500,000 it would have had to appreciate by approximately $2,400,000 in less than one year. Given that the property produces no income, and given the age of its improvements, this is difficult to believe. The court does not believe it.

Fourth, Mr. Ajayi's and the debtor's $5,500,000 valuation lacks credibility and persuasion.

The debtor's opinion is a lay opinion based on her status as an owner. While such an opinion is admissible [see Fed.R.Evid. 701, So. Central Livestock Dealers, Inc., v. Security State Bank, 614 F.2d 1056, 1061 (5th Cir. 1980)], in the face of the movant's appraisal, it carries little weight.

Mr. Ajayi's opinion, based both on his status as an owner and his experience as a real estate agent and broker, is similarly unpersuasive. Even though he purports to believe that the property has a value of $5,500,000, that is, has more than $2,000,000 in equity, he filed a chapter 7 petition on October 11, 2005. Even if the court were prepared to believe that a savvy real estate broker would voluntarily file a chapter 7 petition and thereby give up a $2,000,000 asset, a review of the docket in his case reveals that the chapter 7 trustee made no attempt to administer the property. This suggests that the trustee did not believe there was any realizable equity in the property.

Mr. Ajayi later converted his petition to one under chapter 11, but on December 1, he filed a motion to dismiss the petition.

In his declaration supporting that motion, he attested that he has been "unable to sell the [subject property]," and that he did not "believe [he] would be able to make the monthly payments on the [subject property]." The general thrust of his declaration and motion is that he has made a deal with the creditor holding a lien on his home that will permit him to keep it. Under this circumstance, he is willing to permit creditors secured by an apartment complex he owns and the subject property to foreclose. This tells the court that Mr. Ajayi, like his chapter 7 trustee, does not believe the property is worth $5,500,000 and, to the extent it may have some equity, he and the owners do not have the financial wherewithal to exploit that equity while serving debt, taxes, and insurance.

Mr. Ajayi's opinion is largely based on an alleged "conditional offer" to purchase the subject property from the debtor and the other co-owners. However, property is not valued based on unconsummated offers. Further, no specifics or documentation of that offer have been produced. Finally, Mr. Ajayi's declaration indicates that this offer fell through because the buyer could not obtain financing. Was this because the property was not worth $5,500,000? The fact that the offer fell through suggests that the property does not have a $5,500,000 value.

Apart from the lack of equity in the property, the court concludes that no reorganization is in prospect and that the movant's interest in the property is not adequately protected.

First, the debtor is subsisting on social security benefits. She has no financial ability to develop the property or to pay

its expenses. As suggested by Mr. Ajayi's and his spouse's (she is also a co-owner) bankruptcy petition and the dismissal motion, they likewise have no significant financial resources. As to the remaining five owners, the debtor offered no evidence of their financial abilities. Because the debtor has the burden of proof to establish that the movant is adequately protected [see 11 U.S.C. § 362(g)(2)], the court infers from the lack of this evidence that none of the co-owners is able to financially support the property.

Second, no payments have been made to the movant or to the holder of the senior lien since this case was filed on September 14, 2005. Nor will the debtor or the other owners be paying the real property taxes due in December. These defaults mirror what occurred before the petition was filed. The debtor and the co-owners made one monthly installment to the movant and then failed to pay anything.

Third, in violation of the terms of the movant's deed of trust, the debtor and the other owners have failed to insure the property.

Fourth, the debtor and the co-owners have contracted for repairs and improvements to the property and then failed to pay the contractors, resulting in the property being encumbered under the mechanic's lien law.

Fifth, the property is producing no income.

Sixth, it is evident from the testimony of the debtor and Mr. Ajayi that they do not share the same vision for the use of the property. The debtor wants to start a ministry on the premises and shelter the homeless. While laudable, there is no

evidence in the record that this will ever support the secured debt or the property's upkeep. Mr. Ajayi wants to develop the property for commercial use. Neither of them informed the court how the other five owners wish to develop the property. In short, there is no evidence that all of the owners are in agreement about what to do with the property. This may be one reason the property has never produced revenue.

Seventh, as indicated above, the property has a likely fair market value of $3,300,000. At this value, there is no equity cushion protecting the movant's interest in the property.

Eighth, even though this is a single asset real estate case [in which a plan may have to be filed within 90 days of the petition, see 11 U.S.C. § 362(d)(3)], the debtor could give the court no details regarding a proposed plan of reorganization. The foregoing facts demonstrating a lack of adequate protection also demonstrate that no feasible plan is in prospect.

The motion will be granted.

The 10-day stay of Fed.R.Bankr.P. 4001(a)(3) will be ordered waived.

Because the movant has not established that the value of its collateral exceeds the amount of its claim, the court will award no fees and costs. 11 U.S.C. § 506(b).

A separate order, to be lodged by the movant, will be entered.

Dated: 8 Dec. 2005

By the Court

Michael S. McManus, Chief Judge
United States Bankruptcy Court

**CERTIFICATE OF MAILING**

I, Susan C. Cox, in the performance of my duties as a judicial assistant to the Honorable Michael S. McManus, mailed by ordinary mail to each of the parties named below a true copy of the attached document.

Office of the US Trustee
501 I St. Ste 7-500
Sacramento, CA 95814

Donna Parkinson
400 Capitol Mall #2540
Sacramento, CA 95814

Scott CoBen
1214 F St
Sacramento, CA 95814

Annette Mitchell
1204 Marsielle Ln
Modesto, CA 95351

Dated: December 12, 2005

_Susan C. Cox_
Susan C. Cox
Judicial Assistant to Judge McManus